UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.

JACLYN CALLAHAN,

        Plaintiff,

v.

COLORADO OB/GYN PARTNERS, PLLC d/b/a
MILE HIGH OB/GYN ASSOCIATES,

        and

THE WOMEN'S HEALTH GROUP, P.C.,

        Defendants.

## COMPLAINT AND JURY DEMAND

Plaintiff, Jaclyn Callahan, by and through her attorneys, HKM Employment Attorneys, LLP, for her Complaint against Colorado OB/GYN Partners, PLLC d/b/a Mile High OB/GYN Associates and The Women's Health Group, P.C. (together, "Defendants") states and alleges as follows:

### PRELIMINARY STATEMENT

1. This is an employment discrimination case arising from Defendants' discrimination toward, failure to accommodate, and wrongful termination of Plaintiff because Plaintiff suffers from one or more disabilities and/or perceived disabilities – and sought reasonable accommodations related to same – within the meaning of the Americans with Disabilities Act.

## PARTIES

2. Plaintiff is, and at all times relevant to this Complaint was, a resident of Colorado. At all relevant times, Plaintiff was a member of a protected class of individuals recognized under the ADA.

3. Defendant Colorado OB/GYN Partners, PLLC d/b/a Mile High OB/GYN Associates ("Mile High") is a Colorado corporation. Plaintiff worked for Defendants at their 425 S. Cherry St., Suite 300, Denver, Colorado 80246 location. At all relevant times, Mile High was an "employer" within the meaning of the ADA.

4. Defendant The Women's Health Group, P.C. ("WHG") is a Colorado corporation with a principal office street address of 300 Exempla Circle, Suite 470, Lafayette, Colorado 80026. At all relevant times, WHG was Plaintiff's "employer" within the meaning of the ADA.

5. In January 2019, Mile High merged with WHG.

6. Defendants are employers within the meaning of 42 U.S.C. § 12111(5)(A), in that each Defendant has 15 or more employees each working day in each of 20 or more calendar weeks in the current or preceding calendar year.

## JURISDICTION AND VENUE

7. Plaintiff incorporates by reference the above paragraphs as though set forth separately herein.

8. This Court has original jurisdiction over Plaintiff's federal claims pursuant to 28 U.S.C. § 1331.

9. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because the employment practices and other conduct alleged to be unlawful occurred in this District.

## ADMINISTRATIVE REMEDIES HAVE BEEN EXHAUSTED

10. Plaintiff incorporates by reference the above paragraphs as though set forth separately herein.

11. Plaintiff filed her Charge of Discrimination, Charge Numbers E2000006688 and 32A-2019-00698 with the Equal Employment Opportunity Commission and Colorado Civil Rights Division for disability and/or perceived disability discrimination, failure to accommodate, and retaliation on or about August 16, 2019. Plaintiff was issued a Notice of Right to Sue with respect to Charge Number E2000006631 on or about April 7, 2020. Plaintiff was issued a Notice of Right to Sue with respect to Charge Number 32A-2019-00698 on or about July 6, 2020. Plaintiff filed the present action within ninety (90) days of receipt of the first Notice of Right to Sue.

12. Plaintiff has met all administrative prerequisites prior to filing this action.

## FACTUAL ALLEGATIONS

13. Plaintiff incorporates by reference the above paragraphs as though set forth separately herein.

14. Plaintiff began working for the Defendants as an Administrative Assistant through a placement agency in December 2018.

15. In January 2019, Defendants hired Plaintiff as a full-time employee.

16. In or about November or December 2018, Plaintiff began experiencing hearing difficulties. Plaintiff's bilateral hearing loss worsened significantly in 2019 and began to substantially limit one or more of Plaintiff's major life activities.

17. In or about November or December 2018, Kaylah Harrington (Defendants' Front Office Lead) noticed that Plaintiff was working in the back room and said to Plaintiff that the Defendants put Plaintiff in the back "because you're a slow learner."

18. Because of Plaintiff's disability and/or perceived disability, Ms. Harrington implied that Plaintiff could not efficiently do her job.

19. In or around December 2018, Plaintiff reported to Joni Lane (then Defendants' Office Manager) that she was suffering from hearing loss.  Plaintiff also reported the following instances of harassment related to her hearing loss to Ms. Lane:

   a. Plaintiff reported to Ms. Lane that Ms. Harrington, Plaintiff's direct supervisor, had called her a "slow learner;"

   b. Plaintiff reported to Ms. Lane that Kelly Copeland (Defendants' Insurance Coordinator and Surgery Scheduler) had expressed aggravation when Plaintiff asked Ms. Copeland to repeat herself so that she could better hear Ms. Copeland's statement.  For example, Ms. Copeland would often yell at Plaintiff in an obviously frustrated manner when Plaintiff asked her to repeat a statement; and

   c. Plaintiff reported to Ms. Lane that she was uncomfortable because of the way coworkers seemed to be mocking or responding poorly to her disability (for example, by rolling their eyes, sighing loudly, or yelling in a frustrated manner).

20. To Plaintiff's knowledge, Ms. Lane took no actions to investigate or respond to the harassment described above.

21. Defendants approved Plaintiff's requests for time off of work on the following dates for medical appointments related to Plaintiff's disability:

    a. On February 20, 2019, Plaintiff had a doctor's appointment in the morning and began working at or around 10:33 a.m.;

    b. On March 15, 2019, Plaintiff had a doctor's appointment in the morning and began working at or around 11:50 a.m.;

    c. On March 22, 2019, Plaintiff had a doctor's appointment at lunchtime, and took off of work from approximately 12:45 – 2:00 p.m. for same;

    d. On April 1, 2019, Plaintiff had a doctor's appointment on her lunch break; and

    e. On April 3, 2019, Plaintiff had two doctors appointments in the afternoon and took leave from work beginning around 12:30 p.m. because of same.

22. Plaintiff promptly provided Defendants with medical notes following her appointments.

23. In April 2019, shortly after Cathy Cohen (Defendants' Office Manager) was hired, Plaintiff informed Ms. Cohen of her disability (e.g. sensorineural hearing loss, tinnitus).

24. Beginning in or about April 2019, Plaintiff asked to perform some of her duties (e.g. paperwork) in a back room, as it was quieter than the front office and thus was easier for her to complete tasks. Previously, Plaintiff had been permitted to work in the back room only occasionally. Defendants agreed to this requested accommodation.

25. Despite the small concession of allowing Plaintiff to work in the back room, Defendants' treatment of Plaintiff continued to worsen.

26. Dr. Jennifer Linhorst frequently expressed frustration with Plaintiff's hearing impairment. When Plaintiff asked Dr. Linhorst to repeat something or to face her when speaking

so that Plaintiff could better hear her or attempt to read her lips, Dr. Linhorst became obviously aggravated with Plaintiff.

    a. For example, on one occasion when Plaintiff asked Dr. Linhorst to repeat herself, Dr. Linhorst said: "Fuck this! Fuck it! I'll do it myself!"

27. On or about May 15, 2019, Plaintiff's health care provider loaned her Oticon OPN1 miniRITE hearing aids for the week.

28. On or about May 22, 2019, when Plaintiff returned the loaner hearing aids to her doctor, she also consulted with her doctor about purchasing hearing aids. Plaintiff noted that the loaner pair made a significant difference for her, mostly at work. Plaintiff informed her doctor that she would double-check her health insurance through Defendants to make sure that the hearing aids were covered.

29. Throughout Plaintiff's treatment for her disability, she kept Ms. Cohen apprised of her progress and struggles.

30. In or about June 2019, Plaintiff told Cathy Cohen (Clinic Office Manager) that she needed to take medical leave related to her hearing impairment, and that she anticipated returning to work for Defendants once she had hearing aids.

31. On or about June 4, 2019, Ms. Cohen provided Plaintiff with disability paperwork.

32. On or about June 6, 2019, Plaintiff provided completed disability paperwork to Defendants. **In the medical note Plaintiff provided to Defendants, Plaintiff's doctor stated that Plaintiff needed hearing aids and that Plaintiff's anticipated return to work date was June 21, 2019.**

33. On or about June 6, 2019, Plaintiff provided Ms. Cohen with paperwork from Colonial Life & Accident Insurance Company ("Colonial") and asked Ms. Cohen to fill it out on behalf of the Defendants.

34. On or about June 6, 2019, Plaintiff provided paperwork to Colonial in which she said that her anticipated return to work date was September 30, 2019. However, in the note provided by Plaintiff's doctor (from ENT of Denver) to Colonial and Defendants, Plaintiff's doctor noted that Plaintiff's anticipated return to work date was on June 21, 2019.

35. On or about June 6, 2019, Ms. Cohen filled out the Colonial paperwork, in which she indicated that Plaintiff had exhausted sick leave on June 5, 2019.

36. On June 12, 2019, Ms. Cohen emailed Lisa Filler (from one point HRO, LLC, Defendants' Human Resources provider) to inform Ms. Filler: "Jaclyn Callahan is no lonegr [sp] working with us. She has decided to apply for disability due to hearing loss. Her last day was 6/4/19. Thanks!"

37. On or about June 17, 2019, Plaintiff learned that she was terminated when she received a COBRA continuation election notice from Defendants.

**FIRST CLAIM FOR RELIEF**
**(Disability and/or Perceived Disability Discrimination and Failure to Accommodate in Violation of Section 102(a) and (b)(5)(A) of the Americans with Disabilities Act ("ADA"), as amended, 42 U.S.C. § 12112(a) and (b)(5)(A))**

38. Plaintiff incorporates by reference the above paragraphs as though set forth separately herein.

39. Plaintiff is a disabled person within the meaning of the ADA.

40. Plaintiff suffers from bilateral and/or sensorineural hearing loss and tinnitus.

41. Plaintiff's disability and/or the symptoms directly related to her disability substantially limits one of more major life activities.

42. Plaintiff was qualified for her job and was capable of performing the essential functions of her position with or without a reasonable accommodation.

43. Plaintiff was regarded as being disabled by Defendants.

44. Plaintiff's disabilities were known at the outset by Defendants.

45. Following the June 6, 2019 medical notes in which Plaintiff's medical provider stated that Plaintiff needed a period of leave for medical care and treatment, Defendants denied Plaintiff the reasonable accommodation of leave.

46. The requested reasonable accommodation of leave would not have caused Defendants an undue hardship.

47. Defendants failed to engage in the requisite good faith interactive process with Plaintiff regarding reasonable accommodations under the ADA.

48. Beginning in May 2019, and up until her termination in June 2019, Defendants discriminated against Plaintiff because of her disabilities by subjecting her to less favorable terms, conditions, and privileges of employment than employees outside of Plaintiff's protected class.

49. On or about June 12, 2019, Defendants discriminated against Plaintiff by terminating her because of her disability and/or perceived disability, in violation of the ADA.

50. Plaintiff's disability and/or perceived disability was a motivating factor in the Defendants' decision to terminate Plaintiff.

51. Brittany Lamb and/or Cameron Medina were hired to replace Plaintiff. To Plaintiff's knowledge, Ms. Lamb and Ms. Medina have no known or perceived disabilities. Plaintiff was as qualified as, if not more qualified than, Ms. Lamb and/or Ms. Medina.

52. The effect of Defendants' discriminatory practices has been to deprive Plaintiff of equal opportunities and otherwise adversely affected her status as an employee because of Plaintiff's disabilities and/or perceived disabilities.

53. Defendants' above-described conduct was done with malice or reckless indifference to Plaintiff's federally-protected rights.

54. As a direct and proximate result of Defendants' above-described actions, Plaintiff has suffered damages, including lost wages and benefits, emotional pain and suffering, embarrassment, and inconvenience; and she is entitled to such general and special damages, economic damages, punitive damages, and attorneys' fees and costs as permitted by law.

### SECOND CLAIM FOR RELIEF
(Retaliation in Violation of the ADA, as amended, 42 U.S.C. § 12203(a))

55. Plaintiff incorporates by reference the above paragraphs as though set forth separately herein.

56. In or about December 2018, Plaintiff reported that she was being harassed based upon her disability and/or perceived disability. In doing so, Plaintiff was engaging in activity protected under the ADA.

57. In May and June 2019, Plaintiff requested reasonable accommodations related to her disabilities and/or perceived disabilities, to allow her to perform the essential functions of her position. In doing so, Plaintiff was engaging in activity protected under the ADA.

58. Defendants retaliated against Plaintiff contemporaneous with or after she engaged in the above-described protected activity.

59. More specifically, Defendants terminated Plaintiff's employment. This consequence is of the type that would tend to discourage similarly-situated employees from requesting accommodations and/or complaining about or opposing illegal discrimination.

60. A causal connection exists between Plaintiff's protected activities and Defendants' materially adverse actions, i.e. Defendants discharged Plaintiff because she requested and/or required reasonable accommodations related to her disabling medical condition(s).

61. Defendants' above-described conduct was intentional.

62. Defendants' above-described conduct was done with malice or with reckless indifference to Plaintiff's federally-protected rights.

63. As a direct and proximate result of Defendants' above-described actions, Plaintiff has suffered damages, including lost wages and benefits, emotional pain and suffering, embarrassment, and inconvenience; and she is entitled to such general and special damages, economic damages, punitive damages, and attorneys' fees and costs as permitted by law.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in her favor against Defendants and order the following relief as allowed by law:

A. Compensatory damages, including but not limited to those for past and future pecuniary and non-pecuniary losses, garden-variety emotional distress, pain, inconvenience, mental anguish, and loss of enjoyment of life;

B. Punitive damages as allowed by law;

    C.      Liquidated damages as allowed by law;

    D.      Attorneys' fees and costs of this action;

    E.      Pre-judgment and post-judgment interest at the highest lawful rate; and

    F.      Such further relief as the Court deems just and proper.

## JURY TRIAL DEMAND

Plaintiff requests a trial by jury on all issues so triable.

Respectfully submitted this 6th day of July 2020.

                                                **HKM EMPLOYMENT ATTORNEYS LLP**

                                  By: *s/ Jesse K. Fishman*
                                        Jesse K. Fishman
                                        Claire E. Hunter
                                        HKM Employment Attorneys LLP
                                        730 17th Street, Suite 750
                                        Denver, Colorado 80202
                                        Telephone: (720) 668-8989
                                        jfishman@hkm.com
                                        chunter@hkm.com
                                        *Attorneys for Plaintiff Jaclyn Callahan*

Plaintiff's Address:

10700 E. Dartmouth Ave., Apt. ii301
Denver, Colorado 80014